IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-50308
Cons. w/ No. 96-50257
_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellant,

     versus

EDUARDO VILLA-MORENO, also known as
Javier Moreno,

                                        Defendant-Appellee.

          *******************************

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee
                                        Cross-Appellant,

     versus

JESUS ANTONIO ARRELLIN-DOMINGUEZ,

                                        Defendant-Appellant
                                        Cross-Appellee.
_____

          Appeal from the United States District Court for the
                       Western District of Texas
                   (EP-95-CR-600 & EP-95-CR-434)
_____

                        July 16, 1997
Before EMILIO M. GARZA, PARKER and DENNIS, Circuit Judges.

PER CURIAM:*

     Defendant-appellee Eduardo Villa-Moreno (Villa) and Defendant-

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

appellant-cross-appellee Jesus Antonio Arrellin-Dominguez (Arrellin) were each arrested by El Paso police officers on separate occasions for unrelated offenses. Both Villa and Arrellin were illegal aliens who had previously been deported to Mexico after prior arrests and Texas convictions for burglary. Villa and Arrellin pleaded guilty to indictments charging them with unlawful reentry into the United States, contrary to 8 U.S.C. § 1326. The United States sought enhanced penalties on the basis of the prior state burglary convictions. Because Villa's nine-year probated state sentence was revoked following his guilty plea to the section 1326 offense and he was then resentenced by the state court to a four-year confinement term, the district court determined that the sixteen-level increase in his offense level was not authorized by the United States Sentencing Guidelines. Similarly, the district court refused to increase Arrellin's offense level because after his reentry Arrellin's five-year probated state sentence was revoked and reentered as a sentence of four years' confinement. Because both appeals concern the proper application of the same section of the USSG, and upon a joint motion by the parties, we have consolidated the cases for appellate disposition. For the following reasons, we vacate the sentence and remand for resentencing in each case.

## Facts and Proceedings Below

I.   *United States v. Villa-Moreno*

On December 3, 1995, El Paso police officers arrested Villa

2

for public intoxication.  That same day, United States Border Patrol (USBP) agents conducting a routine check at the El Paso Detention Facility determined that Villa was a Mexican citizen who was in the country illegally.  Villa previously had been deported on September 29, 1994, after a Texas burglary (Texas Penal Code § 30.02) conviction on September 14, 1992.  Villa had reentered the United States shortly after his deportation by wading across the Rio Grande in November 1994.  Villa had not received the Attorney General's consent to reapply for admission to the United States.

A federal grand jury returned an indictment charging Villa with being an alien, previously arrested and deported, found in the United States in violation of section 1326.[1]  The United States

---

[1]    Section 1326 provides as follows:

**"§ 1326.  Reentry of deported alien; criminal penalties for reentry of certain deported aliens**

(a) Subject to subsection (b) of this section, any alien who—

    (1) has been arrested and deported or excluded and deported, and thereafter

    (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

3

Attorney submitted a Notice of Penalty Enforcement alleging that, upon conviction of the offense, the government intended to offer proof of Villa's prior Texas conviction for burglary, subjecting him to potential imprisonment under section 1326(b)(2) for up to twenty years. Thereafter, on December 28, 1995, Villa pleaded guilty to the indictment.

On January 31, 1996, the 41st District Court of El Paso County, Texas, revoked Villa's probation for the September 1992 burglary conviction and imposed a four-year sentence of confinement, replacing the nine-year probated sentence originally assessed.

The Presentence Investigation Report (PSR), prepared by the probation officer, recommended a base offense level of eight under U.S.S.G. § 2L1.2(a), the appropriate sentencing guideline governing section 1326, with a four-level upward adjustment under U.S.S.G. §

---

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—

(1) whose deportation was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both; or

(2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both.

For the purposes of this subsection, the term 'deportation' includes any agreement in which an alien stipulates to deportation during a criminal trial under either Federal or State law."

2L1.2(b)(1)[2] for Villa's prior burglary conviction. The probation officer recommended a downward adjustment of two levels for "affirmative acceptance of personal responsibility" under U.S.S.G. § 3E1.1(a), resulting in a total offense level of 10. Villa's criminal history provided for total "criminal history points" of thirteen, placing him in Criminal History Category VI. Under the guidelines, the imprisonment range using the PSR's offense level determinations was 24-30 months.

The government objected to the PSR's failure to recommend a sixteen-level upward adjustment pursuant to U.S.S.G. § 2L1.2(b)(2). The government argued that *United States v. Vasquez-Balandran*, 76 F.3d 648 (5th Cir. 1996), required the district court to consider the full, nine-year sentence originally imposed to determine whether the prior burglary conviction was an "aggravated felony," regardless of any subsequent change after Villa's probation was revoked. Using the government's calculations, Villa's offense called for a base offense level of eight, with an upward adjustment of sixteen, and, provided the district court deemed it appropriate, a *three*-level downward adjustment for acceptance of responsibility—providing a total offense level of twenty-one, a

---

[2]    U.S.S.G. § 2L1.2(b) provides:
(b) Specific Offense Characteristics
     If more than one applies, use the greater:
     (1) If the defendant previously was deported after a conviction for a felony, other than a felony involving violation of the immigration laws, increase by 4 levels.
     (2) If the defendant previously was deported after a conviction for an aggravated felony, increase by 16 levels.

5

Criminal History Category of VI, and a guidelines imprisonment range of 77-96 months.

Alternatively, the government urged that, pursuant to U.S.S.G. § 4A1.3, an upward departure was appropriate because Villa's extensive criminal record was not reflected adequately by his Criminal History Category.

The district court overruled the government's objection, denied the request for an upward departure, and sentenced Villa to imprisonment for thirty months, nonreporting supervised release for three years, and a special assessment of fifty dollars.

The government filed a timely notice of appeal.

II. *United States v. Arrellin-Dominguez*

On September 11, 1995, El Paso police officers arrested Arrellin for loitering and turned him over to USBP agents. Arrellin admitted to being in the country illegally. Arrellin previously had been deported involuntarily on October 13, 1993, on November 18, 1993, after a December 1992 Texas burglary (Texas Penal Code § 30.02) conviction, and on April 2, 1995.[3] Arrellin had reentered the United States five months after his last deportation by wading across the Rio Grande on September 5, 1995. Arrellin had not received the Attorney General's consent to reapply for admission to the United States.

---

[3]    On 193 other occasions, Arrellin had been returned to Mexico voluntarily.

A federal grand jury returned an indictment charging Arrellin with being an alien, previously arrested and deported, found in the United States in violation of section 1326. The United States Attorney submitted a Notice of Penalty Enhancement similar in all respects to the one submitted for Villa. Thereafter, on January 26, 1996, Arrellin pleaded guilty to the indictment.

On March 15, 1996, the 41st District Court of El Paso County, Texas, revoked Arrellin's probation for the December 1992 burglary conviction *nunc pro tunc* and imposed a four-year sentence of confinement, replacing the five-year probated sentence originally assessed. The effective date of the *nunc pro tunc* entry was January 26, 1996.[4]

The PSR recommended a base offense level of eight under U.S.S.G. § 2L1.2(a) with a four-level upward adjustment for Arrellin's prior burglary conviction. The PSR also recommended a two-level downward adjustment for acceptance of personal responsibility, resulting in a total offense level of ten. Arrellin's Criminal History Score was fourteen, which was increased by three because his offense was committed while on supervised release and less than two years following his release from confinement on April 2, 1995. Accordingly, under the PSR's recommendations, Criminal History Category VI applied, providing an

---

[4]     On January 26, 1996, the 41st District Court of El Paso County had revoked Arrellin's probation for the December 1992 burglary and had imposed a five-year sentence of confinement replacing the five-year confinement term originally assessed and probated for five years.

7

imprisonment range of 24-30 months.

The government objected to Arrellin's PSR on precisely the same grounds that it asserted in Villa's case——namely that *Vasquez-Balandran* required a sixteen-level upward adjustment or, alternatively, an upward departure was warranted in light of Arrellin's extensive criminal history.[5]

The district court overruled the government's objection regarding the sixteen-level upward adjustment, but found that a four-level upward departure was appropriate under U.S.S.G. § 4A1.3. Using a base offense level of fourteen with a Criminal History Category of six, the district court sentenced Arrellin to imprisonment for forty-six months, nonreporting supervised release for three years, and a special assessment of fifty dollars.

Arrellin and the United States each filed timely notices of appeal.

## Discussion

This appeal presents the issue of whether a prior state crime of violence conviction, for which a probated sentence of imprisonment for five years or more was assessed but which, on revocation of probation following illegal reentry, was subsequently reimposed as a four-year sentence of confinement, requires a sixteen-level upward adjustment under U.S.S.G. § 2L1.2(b)(2). The

---

[5]  At the age of twenty, Arrellin, using at least eleven aliases, already had accumulated a remarkable sixteen documented arrests, three deportations, and one hundred ninety-three voluntary "returns."

8

district court held that U.S.S.G. § 2L1.2(b)(2) applied only to the state sentence existing at the time of federal sentencing rather than as originally assessed by the state court. Whether the sentencing guidelines apply to a prior conviction is a question of law, which we review *de novo*. *United States v. Ramos-Garcia*, 95 F.3d 369, 371 (5th Cir. 1996); *United States v. Quinonez-Terrazas*, 86 F.3d 382, 382 (5th Cir. 1996); *United States v. Vasquez-Balandran*, 76 F.3d 648, 649 (5th Cir. 1996).

The material facts are not in dispute and the parties disagree solely as to whether Villa's and Arrellin's prior state sentences meet the "term of imprisonment" requirement of U.S.S.G. § 2L1.2 n.7. Both Villa and Arrellin pleaded guilty to violating section 1326. The appropriate sentencing guideline for violations of that statute is U.S.S.G. § 2L1.2. Under U.S.S.G. § 2L1.2(b)(2), if a defendant convicted of unlawful entry into the United States previously was deported after a conviction for an "aggravated felony," a sixteen-level upward adjustment in the base offense level is required. An "aggravated felony" is defined by Application Note 7 to include "any crime of violence (as defined in 18 U.S.C. § 16, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least five years." U.S.S.G. § 2L1.2 n.7. As neither Villa nor Arrellin contend that their prior Texas state convictions for burglary under Texas Penal Code § 30.02 (in September 1992 and December 1992, respectively) are not "crimes of

9

violence,"[6] their contention that section 2L1.2(b)(2) is inapposite turns on the construction of "imposed" as used in Application Note 7.

Villa, Arrellin, and the government dispute the significance of our recent decision in *United States v. Vasquez-Balandran*, 76 F.3d 648. In *Vasquez-Balandran*, this Court addressed the issue of whether a Texas state sentence for a term of ten years, the imposition of which was probated, was "imposed" as contemplated by U.S.S.G. § 2L1.2(b)(2). Like Villa and Arrellin, Vasquez did not dispute that he had a prior conviction for a crime of violence, but argued that, because he was granted probation pursuant to Texas law, his ten-year sentence for robbery was never "imposed" as required by the sentencing guidelines. This Court, acknowledging that Texas law at the time of Vasquez's state sentencing did in fact distinguish between "assessing" and "imposing" a sentence in the probation context, nevertheless determined that "the distinction made by the Texas courts [was] not controlling" because *federal* rather than *state* law governs the application of the federal sentencing guidelines. *Vasquez-Balandran*, 76 F.3d at 650 (citing *United States v. Morales*, 854 F.2d 65, 68 (5th Cir. 1988)).

---

[6]    8 U.S.C. § 1101(a)(43)(F) provides that a an "aggravated felony" is a crime of violence as defined in 18 U.S.C. § 16. We have held consistently that a Texas conviction for burglary under Texas Penal Code § 30.02 (burglary of a habitation or building) constitutes a conviction for a crime of violence. *See United States v. Guadardo*, 40 F.3d 102, 103 (5th Cir. 1994); *United States v. Cruz*, 882 F.2d 922 (5th Cir. 1989); *United States v. Flores*, 875 F.2d 1110 (5th Cir. 1989).

10

Furthermore, we observed that "there is no indication in the relevant guideline or statutes that the Sentencing Commission or Congress intended state law to determine whether the term of imprisonment was *imposed*." *Id.* (emphasis in original)(citing *Wilson v. INS*, 43 F.3d 211, 214-15 (5th Cir.), *cert. denied*, 116 S.Ct. 59 (1995)).

Finding that federal recognition of the distinction Texas makes between assessment of a sentence and its imposition in the probation context would reach an unintended result under the federal sentencing guidelines, we stated:

> "Under those circumstances, no Texas defendant who received a suspended sentence . . . would be eligible for this enhancement because the suspended sentence would not be deemed "imposed" until probation was revoked. It does not appear that the Sentencing Commission or Congress intended such a result. . . . To hold otherwise would limit the applicability of the enhancement under § 2L1.2(b)(2) to those defendants who actually serve their sentences." *Id.* at 650-51 (concluding that, "although the Texas legislature labeled it 'assessing,' for our purposes, the [state sentencing] court was imposing a term of imprisonment, which it then suspended").

The *Vasquez-Balandran* opinion's conclusion that the sentencing guidelines did not support the distinction urged by Vasquez was predicated on the language in the application note (and identical statutory definition of aggravated felony), which provides that the enhancement applied "regardless of any suspension of such imprisonment." *Id.* at 650.[7]

---

[7]     We observe that the relevant wording of Villa's and Arrellin's original sentences is identical to that of the defendant in

11

At both Villa's and Arrellin's sentencing, the government

---

*Vasquez-Balandran*.

Arrellin's December 11, 1992, criminal judgment states in relevant part:

> "It is therefore considered and adjudged by the Court that said Defendant is guilty of the offense of Burglary . . ., and that he be punished by confinement in the Texas Department of Corrections for five (5) years and . . . [no fine or costs].
>
> The imposition of the above sentence is suspended and the Defendant is placed on adult probation under the terms and conditions set out in Exhibit 'A' hereto attached." [The attached exhibit specifies, *inter alia*, that the probation is "for the period of five (5) years"].

Villa's September 14, 1992, criminal judgment states in relevant part:

> "It is therefore considered and adjudged by the Court that said Defendant is guilty of the offense of Burglary . . ., and that he be punished by confinement in the Texas Department of Corrections for nine (9) years and . . . [no fine or costs].
>
> The imposition of the above sentence is suspended and the Defendant is placed on adult probation under the terms and conditions set out in Exhibit 'A' hereto attached." [The record before us does not contain a copy of the Exhibit A].

In *Vasquez-Balandran*, the original state criminal judgment provided as follows:

> "It is therefore considered and adjudged by the Court that the said Defendant is guilty of the offense of Robbery, Count 2 paragraph 'B' as confessed by him in said plea of guilty herein made, and that he be punished by confinement in the Texas Department of Criminal Justice-Institute [sic] Division for ten (10) years and a fine of $0 . . . *The imposition of the above sentence (and fine) is suspended* and the Defendant is placed on adult probation under the terms and conditions set out in Exhibit 'A' hereto attached." *Id*. at 649 n.1 (emphasis supplied by *Vasquez-Balandran*).

12

objected to their respective PSR's failure to recommend the sixteen-level upward adjustment in the base offense level on the grounds that, after *Vasquez-Balandran*, the relevant state sentence for federal sentence enhancement under U.S.S.G. § 2L1.2(b)(2) was the original sentence set by the Texas state court. Under the government's position, the five-year term of imprisonment required for aggravated felony enhancement under U.S.S.G. § 2L1.2(b)(2) was selected as a benchmark for establishing the seriousness of the predicate felony. Accordingly, the government contends that whether the convicted felon ever served a single day of his sentence behind bars or subsequently was able to obtain a reduced sentence from the state court is immaterial to a proper determination of his federal sentence enhancement for violation of section 1326.

Villa and Arrellin make identical arguments in support of the district court's refusal to make the sixteen-level upward adjustment. First, they argue that the "plain language" of U.S.S.G. § 2L1.2(b)(2) n.7 (requiring that the prerequisite five-year term of imprisonment be *imposed*) is facially inapplicable in light of their subsequent, reduced four-year sentences. Second, they contend that *Vasquez-Balandran* is distinguishable, and therefore not controlling, because "no specific term of imprisonment had been imposed on the [*Vasquez-Balandran*] defendant; instead, a sentence was assessed, suspended and the defendant was placed on probation." Finally, they argue that *Vasquez-Balandran*

was wrongly decided because it both conflicts with various statutory construction principles and the federal sentencing guidelines' goals of uniformity and fairness.

Villa's and Arrellin's "plain language" argument assumes away the issue before the court. They argue not so much for a plain-language construction of the federal sentencing guideline, but for this Court to give federal effect to the state's choice of sentencing jargon. If, in fact, the only sentences "imposed" by the Texas state courts were the four-year sentences imposed after Villa's and Arrellin's arrests for unlawful entry and the subsequent revocation of their probation, then U.S.S.G. § 2L1.2(b)(2) would indeed be facially inapplicable. We are, however, unable to indulge this assumption in light of *Vasquez-Balandran*'s guidance that federal, not Texas, law determines whether a sentence has been "imposed." On this point *Vasquez-Balandran* was unequivocal: Whatever the niceties of Texas sentencing nomenclature, for the purposes of U.S.S.G. § 2L1.2(b)(2)'s enhancement provision, "there is no meaningful distinction between a Texas court's 'assessing' a term of imprisonment and 'imposing' a term of imprisonment." *Vasquez-Balandran*, 76 F.3d at 650-51.

The decision in *Vasquez-Balandran* to refuse the proffered distinction between "assessed" and "imposed" was not, as Arrellin asserts, "decided in a vacuum." To hold that every state, by virtue of its unquestioned authority to develop comprehensive

14

sentencing schemes, can unilaterally affect the mechanics of the federal sentencing guidelines by its choice of nomenclature would defeat the very goal of uniformity in sentencing that the United States Sentencing Commission was formed to accomplish.

This concern accounts for the "general assumption that 'in the absence of a plain indication to the contrary, . . . Congress when it enacts a statute is not making the application of the federal act dependent on state law.'" *Mississippi Band of Choctaw Indians v. Holyfield*, 109 S.Ct. 1597, 1605-06 (1989) (noting that "federal statutes are generally intended to have uniform nationwide application"); *see also Taylor v. United States*, 110 S.Ct. 2143, 2154 (1990) (stating that, for the purposes of the federal firearm statute, the meaning of "burglary" should not depend on "whether the State of his prior conviction happened to call that conduct 'burglary'"); *Dickerson v. New Banner Inst.*, 103 S.Ct. 986, 991 (1983) ("Whether one has been 'convicted' . . . is necessarily . . . a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the State."); *United States v. Turley*, 77 S.Ct. 397, 399 (1957) ("[I]n the absence of a plain indication of an intent to incorporate diverse state laws into a federal criminal statute, the meaning of the federal statute should not be dependent on state law."). *See also United States v. Chambers*, 922 F.2d 228, 235 (5th Cir. 1991) ("whether a state indictment that is defective in some particular may nevertheless be an indictment for purposes of [18

15

U.S.C.] section 922 (n) is ultimately a question of federal law.").
The application of the federal sentencing guidelines is no less a
matter of federal, rather than state, concern. *See Ramos-Garcia*,
95 F.3d at 371 ("[F]ederal law, rather than state law, controls the
interpretation of U.S.S.G. § 2L1.2."); *United States v. Cordova-
Beraud*, 90 F.3d 215, 219 (7th Cir. 1996) (same); *Vasquez-Balandran*,
76 F.3d at 650; *United States v. Cuevas*, 75 F.3d 778, 780 (1st Cir.
1996) (same); *United States v. Ortiz-Gutierrez*, 36 F.3d 80, 82 (9th
Cir. 1994) (same). Accordingly, although a state may use different
terms to describe, reduce, or expunge the imposition of a sentence,
"state law does not alter the historical fact of the conviction"
nor does it change the character of the sentence imposed as of the
time of the illegal reentry. *Dickerson*, 103 S.Ct. at 993; *see also
Tuten v. United States*, 103 S.Ct. 1412, 1415 n.9 (1983) ("Of
course, federal legislation may impose disabilities even on persons
whose convictions have been expunged.")

We similarly find no merit in Villa's and Arrellin's argument
that *Vasquez-Balandran* is not controlling because, unlike the
appellant in that case, each had a definite sentence imposed after
his probation was revoked. Aside from the fact that, again, this
argument rests on our acceptance of the Texas sentencing
nomenclature as binding on the federal courts, we see no reason why
Villa's and Arrellin's subsequent resentencing has any relevance to
a proper determination of section 2L1.2(b)(2)'s enhancement
provision. The dispositive question is whether, *at the time the*

16

*deported felon previously convicted of a crime of violence reentered the United States illegally*, he was subject to an "imposed" sentence for that crime of five or more years' imprisonment. *See Chambers* at 231-234 (dismissal of state indictment on which 18 U.S.C. § 922(n) prosecution predicated prior to federal sentencing does not warrant grant of new trial); *United States v. Brown*, 484 F.2d 418, 424, *cert. denied*, 94 S.Ct. 1490 (1974) ("[e]ven assuming *arguendo* that the underlying indictment is later found invalid, the crime under [18 U.S.C.] § 902(e) is complete when a firearm is carried in interstate commerce by a person then under indictment"). The argument that *Vasquez-Balandran* is distinguishable because there "no specific term of imprisonment had been imposed" is without merit: the term of imprisonment there—ten years, suspended—was sufficiently "imposed" for purposes of section 2L1.2(b)(2). The same necessarily follows here.

Both Villa and Arrellin were convicted of burglary; both were sentenced to terms of imprisonment in excess of five years which were probated at sentencing; both were deported as a result of criminal activity within the United States; and both thereafter unlawfully reentered the United States carrying the baggage of their prior criminal convictions and sentences of five years or more. Their argument that reductions in their terms of imprisonment subsequent to their reentry somehow render their prior sentences insufficient for enhancement purposes misses the point.

17

It does not matter that an illegal alien's prior sentence was "indeterminate" as opposed to "definite," *see Quinonez-Terrazas*, 86 F.3d at 382, that an illegal alien's term of imprisonment was "assessed" rather than "imposed" under Texas law, *see Vasquez-Balandran*, 76 F.3d 648, or that an illegal alien *served* only a portion as opposed to the complete term of the sentence imposed, *see Cordova-Beraud*, 90 F.3d at 219. Rather, without regard to technical sentencing-jargon, section 2L1.2(b)(2) requires a federal court to determine whether, at the time of the unlawful reentry, the defendant was, and had been prior to his deportation, under a sentence for a term of imprisonment of at least five years, whether denominated under state law as assessed, imposed, probated, suspended, or any conceivable synonym for what is commonly considered "imposed." Indisputably, *Vasquez-Balandran* mandates the holding that, for purposes of section 2L1.2(b)(2), Villa and Arrellin, when they were deported and when they illegally reentered the United States, were each persons who stood convicted of a felony crime of violence for which the sentence imposed was five years or more confinement, whether or not suspended.[8]

Nor do we believe that applying the rule announced in *Vasquez-Balandran* results in a distortion of the Sentencing Commission's

---

[8]     We are not presented with, and we do not address, the question of whether one who has received a qualifying five-year or more probated state sentence, subsequently had probation revoked, and received a new imprisonment term of less than five years, prior to a later deportation or unlawful reentry, is subject to the "aggravated felony" enhancement of U.S.S.G. § 2L1.2(b)(2).

purpose. To the contrary, it is Villa's and Arrellin's construction that would result in incongruous results. Under their view, an illegal alien who successfully completes his probation period would come within the terms of section 2L1.2(b)(2)'s enhancement provision, but one who——like Villa and Arrellin——violated the terms of his probation by committing yet another offense would have the opportunity to seek a reduction of his term of imprisonment at his probation revocation hearing in order to excuse application of the enhancement provision.[9] Surely that was not the goal of the Commission when it promulgated U.S.S.G. § 2L1.2(b)(2). Likewise, Villa and Arrellin do not explain how their approach could effectively operate in instances where the state probation is revoked, and a less than five-year sentence is imposed, *after* the federal section 1326 sentencing had become final on appeal or by failure to timely appeal.

## Conclusion

For the foregoing reasons, we VACATE the sentences imposed by the district court and REMAND for redetermination of proper sentences for Villa and Arrellin using U.S.S.G. § 2L1.2(b)(2)'s sixteen-level upward adjustment for the base offense level of

---

[9] Villa and Arrellin argue, without support, that Texas's sentencing scheme unfairly disadvantages Texas illegal aliens who have violated the terms of their probation because other jurisdictions do not require an assessment of punishment at the time probation is awarded. We do not find their argument persuasive.

each.[10]

Sentences VACATED; causes REMANDED for Resentencing.

DENNIS, Circuit Judge, dissenting.

I respectfully dissent. The result reached by the majority opinion is not accordant with the Sentencing Guidelines or required by precedent.

Section 2L1.2 of the Sentencing Guidelines provides for an increase of 16 levels for an illegal reentry conviction if the alien was convicted of an aggravated felony prior to the deportation. Under the version of Section 2L1.2 of the sentencing guidelines pertinent to this case, an aggravated felony includes a crime of violence "for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years." Thus, the sentencing commission clearly intended for enhancement of the federal sentence to be governed by the length of the state sentence, evidently because the number of years meted out is indicative of the sentencing judge's estimate of the magnitude and severity of the crime. Accordingly, in a case in which the state sentencing judge reduces or increases the state sentence *nunc pro tunc* for any valid reason, e.g., because of a mistake in the initial sentence or the availability of additional or more reliable

---

[10] Our disposition of the issues relating to section 2L1.2(b)(2) and consequent remand renders it unnecessary to consider Arrellin's complaint on appeal respecting upward departure.

20

sentencing information, I believe the sentencing commission intended for the sentence actually imposed, not the superseded, non-existent sentence, to govern the enhancement of the federal sentence. There is no indication that the commission intended for the federal sentence to be based on a retroactively superseded state sentence that may have been affected by mistake, lack of reliable information, or substantial inflation as a disincentive to probation violations.

In the present cases, the state sentences imposed were not aggravated felonies because the state sentencing judges entered sentences of less than five years, *nunc pro tunc*, i.e., so as to have legal effect from the dates of the initial sentencings. There is no evidence that the state sentencing judges acted in bad faith or for an invalid reason. Accordingly, Section 2L1.2 does not require an increase of 16 levels in either case, and the district courts' judgments should be affirmed.

*United States v. Vasquez-Balandran*, 76 F.3d 648 (5th Cir. 1996), does not hold otherwise or require us to disturb the district courts' judgments in the present cases. In the *Vasquez* case, this court simply held that in the context of enhancing a defendant's sentence under § 2L1.2, there is no meaningful distinction between a Texas court's "assessing" a term of imprisonment and "imposing" a term of imprisonment. This court reached that conclusion in response to Vasquez's argument that under Texas law, when the state court granted probation the

21

sentence was "assessed" and not "imposed," even though the sentence at issue referred to its "imposition" and did not contain any reference to an "assessed" sentence. Accordingly, because the state court had sentenced Vasquez to ten years and then suspended the imposition of the sentence and placed him on probation, this court affirmed the district court's holding that § 2L1.2 applied based on Vasquez's prior conviction of a crime of violence and a sentence exceeding five years, even though it was suspended.

Consequently, I respectfully disagree with the majority's conclusion that *Vasquez-Balandran* establishes a mechanical timing rule that forces the federal sentencing court to use a retroactively superseded, non-existent state sentence when applying § 2L1.2. Instead, the *Vasquez* case requires that the federal sentencing court use "the term of imprisonment imposed (regardless of any suspension of such imprisonment)" to determine whether the state sentence is one for an aggravated felony for purposes of determining the enhancement question under § 2L1.2. Consequently, I believe the district courts in the present cases acted in accordance with the intention of the Sentencing Commission and consistently with *Vasquez-Balandran* in using the currently or actually existing state sentences in applying § 2L1.2.